## United States v. Roberts and others.*

(Circuit Court, S. D. Ohio, W. D.　February, 1882.)

1. Officers—Accounts with Government—Telegraph Messages—Excessive
Charges.

Where an officer paid for official telegraph messages more than the rate agreed upon between the government and the company, *held*, that if the officer had no notice of the price agreed upon between the government and the telegraph company for such messages, and if he paid the price demanded by the company, in good faith, he was entitled to credit therefor in his account.

2. Same—Same—Indian Interpreters' Salaries—Change in Law.

An Indian agent, upon assuming his office, was instructed to pay interpreters a yearly salary of $500. Subsequently, without his knowledge, the law was changed and their salaries fixed at $400. The agent continued to pay $500. *Held*, that he was entitled to credit therefor in his accounts.

3. Salary of Officer—When it Commences—Indian Agent.

An Indian agent was commissioned on September 28, 1872; he gave bond, took the oath of office, and was in readiness for duty October 15th. November 4th he received orders and started for his destination. He arrived at his post and reported for duty January 11, 1873, and on January 20th he took charge of the agency. *Held*, that he was entitled to his salary from the time he actually went to work for the government.

This was an action on the official bond of James E. Roberts, as Indian agent, upon vouchers disallowed by the accounting officers in the settlement of his accounts. Amount claimed, $693.38. The defence was that all money received by him had been lawfully expended, and that the vouchers were improperly disallowed.

The following questions arose during the progress of the case:

(1) It appeared from the evidence that Roberts had sent a number of official telegrams over a line having a contract with the government establishing a certain rate at which official messages should be paid; that he was charged, and in good faith paid, more than the contract price, and had no knowledge of the rate fixed between the government and the company, and no means of knowing whether the price he paid was reasonable or unreasonable.

(2) It also appeared from the evidence that when Roberts took charge of the agency he received written instructions to pay interpreters' salaries at the rate of $500 a year, and that he did pay them at this rate during his term of office; that he did not know that the law had been changed and a new statute passed during his term of office, fixing the salaries of interpreters at his agency at the rate of $400 a year, and that he had received no instructions from the department notifying him of such change.

(3) It also appeared from the evidence that James E. Roberts was commissioned on September 28, 1872; that on October 15th he gave bond and took

*Reported by J. C. Harper, Esq., of the Cincinnati bar.

the oath of office, and was under orders to hold himself in readiness to start for his post at a moment's notice; that on November 4th he received orders to report for duty, and started the same day, arriving at his destination and reporting for duty on January 11, 1873, and went to work at putting the affairs of the agency in shape to be turned over to him, until January 20, 1873, when he receipted for the property to his predecessor and took charge of the agency.

The government fixed the date at which his salary should begin to run at January 20th, the day he relieved his predecessor, and disallowed Roberts' claim in his account for salary from September 28, 1873, the date of commission.

*Channing Richards,* U. S. Atty., for plaintiff.

*L. H. Pummill, contra.*

SWING, D. J., charged the jury—1. That if they found that Roberts had no notice of the price agreed upon between the government and the telegraph company for such messages, and that he paid the price demanded by the company, in good faith, he was entitled to credit therefor in his account.

2. That if they found he paid the interpreters in good faith, under instructions previously given, at the rate of $500 a year, and without knowledge of the change in the law fixing their compensation at $400 a year, he was entitled to credit therefor in his account.

3. That the defendant was entitled to his salary from the time they found he actually went to work for the government.

Verdict for plaintiff for $53.17.